# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                                    Criminal Case No: 1:07cr10

SHERMAN BRETT DILS, IV
        Defendant.

## OPINION/ REPORT AND RECOMMENDATION CONCERNING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Sherman Brett Dils, IV, appeared before me in person and by counsel, George J. Cosenza, on April 12, 2007. The Government appeared by Sharon L. Potter, United States Attorney.

Defendant was sworn by the Clerk.

Thereupon, the Court proceeded with the Rule 11 proceeding by asking Defendant's counsel what Defendant's anticipated plea would be. Counsel responded that Defendant would enter a plea of "Guilty" to a one-count Information. The Court then determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court then asked counsel for the Government to summarize the written Plea Agreement. Counsel for Defendant stated that the Government's summary of the Plea Agreement was correct. The Court ORDERED the written Plea Agreement filed.

The Court continued with the proceeding by inquiring of Defendant as to his understanding of his right to have an Article III Judge hear his plea and his willingness to waive that right, and instead have a Magistrate Judge hear his plea. Defendant stated in open court that he voluntarily waived his right to have an Article III Judge hear his plea and voluntarily consented to the

undersigned Magistrate Judge hearing his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before the United States Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Sherman Brett Dils, IV, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court ORDERED the written Waiver and Consent filed.

Defendant thereafter stated in open court he understood and agreed with the terms of the written plea agreement as summarized by the Assistant United States Attorney during the hearing, and that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement dated September 8, 2006, and signed by him on September 11, 2006, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant.

The undersigned Magistrate Judge inquired of Defendant and his counsel relative to Defendant's knowledge and understanding of his constitutional right to proceed by Indictment and the voluntariness of his Consent to Proceed by Information and of his Waiver of his right to proceed

by Indictment, to which Defendant and his counsel verbally acknowledged their understanding and Defendant, under oath, acknowledged his voluntary waiver of his right to proceed by Indictment and his agreement to voluntarily proceed by Information. Defendant and his counsel executed a written Waiver of Indictment. Thereupon, the undersigned Magistrate Judge received and ORDERED the Waiver of Indictment and the Information filed and made a part of the record herein.

The undersigned Magistrate Judge further inquired of Defendant, his counsel and the Government as to the non-binding aspects of the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in the Information, the undersigned Magistrate Judge would write the subject Report and Recommendation and tender the same to the District Court Judge, and the undersigned would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the subject Report and Recommendation, as well as the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject Defendant's plea of guilty or any recommendation contained within the plea agreement or pre-sentence report.

The undersigned Magistrate Judge further addressed the stipulation contained in the written plea bargain agreement, which provides:

> Pursuant to U.S.S.G. Sections 6B1.4, 1B1.3, and 2B1.1, the parties hereby stipulate and agree that the United States' position as to the total relevant conduct in this case falls between $400,000.00 and $1,000,000.00, and is based on the amount of outstanding loss attributable to Defendant's scheme as outlined in the Information. The parties agree that Defendant shall have the opportunity to dispute that amount at time of sentencing, should he choose to do so, and said argument should not affect the United States' recommendation as to a reduction for acceptance of responsibility, should the probation officer so find. The parties have no other agreement or

> stipulations as to any other relevant conduct or specific offense characteristics, and agree that all other sentencing determinations will be resolved by the Court.

The undersigned then advised Defendant, counsel for Defendant, and counsel for the United States, and determined that the same understood that the Court is not bound by the above stipulation and is not required to accept the above stipulation, and that should the Court not accept the above stipulation, Defendant would not have the right to withdraw his plea of Guilty to the one-count Information.

The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, in the event the District Judge rejected Defendant's plea of guilty, Defendant would be permitted to withdraw his plea and proceed to trial. However, Defendant was further advised if the District Court Judge accepted his plea of guilty to the felony charge contained in the one-count Information, Defendant would not be permitted to withdraw his guilty plea even if the Judge refused to follow the non-binding recommendations contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected. Defendant and his counsel each acknowledged his understanding and Defendant maintained his desire to enter a plea of guilty.

The Court confirmed the Defendant had received and reviewed the one-count Information in this matter with his attorney. The undersigned reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in the Information, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him; understood that the maximum sentence which could be imposed upon his conviction or adjudication of guilty on that

charge was imprisonment for a term of not more than thirty (30) years; understood that a fine of not more than $1,000,000.00 per count could be imposed; understood that both imprisonment and fine could be imposed; understood he would be subject to at least five (5) years of supervised release; understood the Court would impose a special assessment of $100.00 for the felony conviction payable at the time of sentencing[1]; understood that the Court may require him to pay the costs of his incarceration, the costs of community confinement and the costs of supervised release; understood that his actual sentence would be determined by the District Judge after a pre-sentence report was prepared and a sentencing hearing conducted; and further determined that Defendant was competent to proceed with the Rule 11 plea hearing and that no one could predict what his actual sentence would be.

The undersigned Magistrate Judge further examined Defendant with regard to his understanding of the impact of his waiver of his direct and collateral appeal rights as contained in his written plea agreement and determined he understood those rights and voluntarily gave them up under the written plea agreement.

The undersigned Magistrate Judge further cautioned and examined Defendant under oath concerning all matters mentioned in Rule 11.

The undersigned then reviewed with Defendant the one-count Information, including the elements the United States would have to prove at trial, charging him with Mail Fraud, in violation of Title 18, United States Code, Section 1341.

The Court then heard the testimony of United States Postal Inspector Ken Gournic. Inspector

---

[1] Counsel for the Defendant and the United States each represented Defendant had paid the $100.00 special assessment to the Clerk.

Gournic testified that the Postal Service became involved in the case regarding Defendant and St. Mary's Ford after the Pleasants County Prosecutor received complaints regarding the dealership and contacted the Postal Service. Inspector Gournic was assigned to investigate the matter. Pursuant to the investigation a search warrant of St.. Mary's Ford was executed, in which numerous records were seized and reviewed. Individuals were also interviewed during the investigation. The investigation showed that Defendant was the president of the company, and was primarily responsible for working with banks and Ford Motor Company to receive and sell vehicles. He would receive a floor plan agreement from a bank in order to receive cars to sell. At the inception of the business in 1999, it appeared to be fairly successful. Defendant eventually began encountering difficulties, however, including that Ford stopped selling him vehicles and the bank reduced his floor plan. These events impacted Defendant's ability to generate income.

In order to generate income, Defendant began using the Internet to locate cars for sale. A customer would come into the dealership looking for a particular car. Defendant or his employees would search the Internet for the type of vehicle the customer wished to buy. When they located a vehicle, they would buy the vehicle from the car dealership with a check from the St. Mary's Ford account. A number of such checks to dealerships were fraudulent – that is, there were insufficient funds to cover the checks. Once the new car was brought back to the dealership it was often delivered directly to the customer by a St. Mary's ford employee. On numerous occasions, the customer had traded in another vehicle in partial satisfaction of the new vehicle price. The agreement was such that St. Mary's Ford would take in the traded-in vehicle and pay off what the customer owed on it. However, Defendant ,as President of the company, did not satisfy the trade-in loan on a number of occasions, leaving the customer "on the hook" for the loan on the traded-in

6

vehicle. Complaints from such customers prompted the investigation.

Regarding the count in the Information, on April 26, 2005, a customer traded in a 2001 Dodge Dakota on a new Ford F150 truck. St. Mary's Ford obtained the F150 from a dealership in Kentucky, paying for the vehicle with a check that was fraudulent– that is, not backed by sufficient funds. Defendant also mailed a check in the amount of $14,410.36 made payable to Americredit to pay off the customer's trade-in, knowing the check placed in the mail was fraudulent and would not be satisfied..

Inspector Gournic testified that, at first, it appeared Defendant was "scrambling" to make the payments, but got further and further behind. The amount on which the government bases its relevant conduct is based on certain mailings that were made "post scrambling" – that is, after Defendant knew there were insufficient funds to cover the checks. In order to determine the amount, customers were asked if their trade-in loans had been satisfied and dealerships were asked if they had received fraudulent checks. Those reporting that checks or loans had not been "made good" included 12 customers and finance companies and 17 new car dealers, with a total amount of $653,000 dollars outstanding.

Defendant testified that he heard and understood Inspector Gournic's testimony and did not disagree with any of that testimony. Thereupon, Defendant, Sherman Brett Dils, IV, with the consent of his counsel, George J. Cosenza, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in the one-count Information.

Based upon the testimony of Inspector Gournic , the undersigned United States Magistrate Judge finds there is an independent basis in fact for Defendant's plea of Guilty to the one-count Information.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing his plea; Defendant knowingly and voluntarily waived his right to proceed by Indictment and elected to proceed by Information; Defendant understood the charges against him; Defendant understood the consequences of his plea of guilty; Defendant made a knowing and voluntary plea; and Defendant's plea is supported by the testimony of Inspector Gournic.

The undersigned United States Magistrate Judge therefore recommends Defendant's plea of guilty to the felony charge contained in the one-count Information herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation and a Pre-Sentence Investigation Report, and that the Defendant be adjudged guilty on said charge as contained in said one-count Information and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn,

474 U.S. 140 (1985).

It appearing that this was Defendant's first appearance before the Court, it is hereby Ordered that Defendant is released pursuant to an Order Setting Conditions of Release to be entered in this matter.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 13th day of April, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE